**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------

SHIVA STEIN,                                  :
                                              :
            Plaintiff,                        :     Civil Action No. 1:22-cv-903
                                              :
v.                                            :
                                              :     **COMPLAINT FOR VIOLATIONS OF**
R.R. DONNELLEY & SONS COMPANY,                :     **SECTIONS 14(a) AND 20(a) OF THE**
JOHN C. POPE, IRENE M. ESTEVES,               :     **SECURITIES EXCHANGE ACT OF**
SUSAN GIANINNO, DANIEL L. KNOTTS,             :     **1934**
TIMOTHY R. MCLEVISH, JAMIE                    :
MOLDAFSKY, and JAMES RAY,                     :     **JURY TRIAL DEMANDED**
                                              :
            Defendants.                       :
--------------------------------------------------------  :

        Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon

information and belief, including investigation of counsel and review of publicly-available

information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal

knowledge:

        1.      This is an action brought by Plaintiff against R. R. Donnelly & Sons Company ("R.

R. Donnelly or the "Company") and the members R. R. Donnelly board of directors (the "Board"

or the "Individual Defendants" and collectively with the Company, the "Defendants") for their

violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange

Act"), in connection with the proposed acquisition of R. R. Donnelly by affiliates of Chatham

Asset Management, LLC ("Chatham").

        2.      Defendants have violated the above-referenced Sections of the Exchange Act by

causing a materially incomplete and misleading Definitive Proxy Statement on Schedule 14A (the

"Proxy Statement") to be filed on January 21, 2022 with the United States Securities and Exchange

Commission ("SEC") and disseminated to Company stockholders. The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Chatham Delta Acquisition Sub Inc. ("Merger Sub"), a wholly owned subsidiary of Chatham Delta Parent Inc. ("Parent"), will merge with and into R. R. Donnelly with R. R. Donnelly surviving the merger and becoming a wholly owned subsidiary of Parent (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement") each R. R. Donnelly common share issued and outstanding will be converted into the right to receive $10.85 in cash (the "Merger Consideration"). Merger Sub and Parent are both affiliated with Chatham.

3. As discussed below, Defendants have asked R. R. Donnelly stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the Company's financial forecasts and financial analyses conducted by the financial advisors of the Company, Centerview Partners LLC ("Centerview") in support of its fairness opinion, and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

4. It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to R. R. Donnelly stockholders or, in the event

the Proposed Transaction is consummated, to recover damages resulting from the Defendants'

violations of the Exchange Act.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange

Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges

violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.      Personal jurisdiction exists over each Defendant either because the Defendant

conducts business in or maintains operations in this District, or is an individual who is either

present in this District for jurisdictional purposes or has sufficient minimum contacts with this

District as to render the exercise of jurisdiction over defendant by this Court permissible under

traditional notions of fair play and substantial justice.

8.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. §

78aa, as well as under 28 U.S.C. § 1391, because the Company's stock is traded on the New York

Stock Exchange, headquartered in this District. The proxy solicitor for the Company, Innisfree

M&A Incorporated, and the financial advisor of the Company, Centerview, are also headquartered

in this District.

## PARTIES

9.      Plaintiff is, and has been at all relevant times, the owner of R. R. Donnelly common

stock and has held such stock since prior to the wrongs complained of herein.

10.     Individual Defendant John C. Pope has served as a member of the Board since 2004

and is the Chairman of the Board.

11.     Individual Defendant Irene M. Esteves has served as a member of the Board since

2017.

12.     Individual Defendant Susan Gianinno has served as a member of the Board since 2013.

13.     Individual Defendant Daniel L. Knotts has served as a member of the Board since 2016 and is the Company's Chief Executive Officer and President.

14.     Individual Defendant Timothy R. McLevish has served as a member of the Board since 2016.

15.     Individual Defendant Jamie Moldafsky has served as a member of the Board since March 2016.

16.     Individual Defendant James Ray has served as a member of the Board since March 2021.

17.     Defendant R. R. Donnelly is incorporated in Delaware and maintains its principal offices at 35 West Wacker Drive, 36th Floor, Chicago, Illinois 60601.  The Company's common stock trades on the New York Stock Exchange under the symbol "RRD."

18.     The defendants identified in paragraphs 10-16 are collectively referred to as the "Individual Defendants" or the "Board."

19.     The defendants identified in paragraphs 10-17 are collectively referred to as the "Defendants."

### SUBSTANTIVE ALLEGATIONS

A.     <u>**The Proposed Transaction**</u>

20.     R. R. Donnelly, an integrated communications provider, enables organizations to create, manage, deliver, and optimize their multichannel marketing and business communications. Its Business Services segment offers commercial printing products and branded materials, including manuals, publications, brochures, business cards, flyers, post cards, posters, and promotional items; and packaging solutions comprising rigid boxes and in-box print materials for

clients in the consumer electronics, healthcare and life sciences, cosmetics, and consumer packaged goods industries. It also provides customer billings, financial statements, healthcare communications, and insurance document statement printing services; and distribution, shipping, healthcare, durable goods, promotional, and consumer product goods packaging labels. In addition, this segment offers workflow design, assembly, configuration, kitting, and fulfillment services for clients in the consumer electronics, telecommunications, life sciences, cosmetics, education, and industrial industries. Further, it provides invoices, order, and business forms that support the private and public sectors; and outsourcing services, such as creative services, research and analytics, financial management, and other services for legal providers, insurance, telecommunications, utilities, retail, and financial services companies. The Company's Marketing Solutions segment offers direct marketing, such as audience segmentation, creative development, program testing, print production, postal optimization, and performance analytics for large-scale personalized direct mail programs; and in-store marketing, digital print, kitting, fulfillment, digital, and creative solutions and list services. It operates in the United States, Asia, Europe, and internationally. The Company was founded in 1864 and is headquartered in Chicago, Illinois.

21.     On December 14, 2021, R. R. Donnelly announced that it had terminated a prior merger agreement it had entered into with Atlas Holdings LLC ("Atlas") and had entered into the Proposed Transaction with Chatham:

> CHICAGO--(BUSINESS WIRE)-- R.R. Donnelley & Sons Company ("RRD" or the "Company") (NYSE: RRD) today announced that it has entered into a definitive merger agreement (the "Chatham Merger Agreement") to be acquired by affiliates of Chatham Asset Management, LLC ("Chatham"), a leading private investment firm, in an all-cash transaction with a total enterprise value of approximately $2.3 billion and total equity value of approximately $897 million. RRD today also announced that it has terminated its previously announced merger agreement with affiliates of Atlas Holdings LLC ("Atlas"), dated November 3, 2021

(as amended on December 9, 2021, the "Amended Atlas Merger Agreement"), pursuant to which affiliates of Atlas had agreed to acquire RRD for $10.35 per share in cash. The termination of the Amended Atlas Merger Agreement follows the decision by Atlas to waive its contractual opportunity through December 16, 2021 to negotiate an amendment of the Amended Atlas Merger Agreement such that the transaction contemplated by the Chatham Merger Agreement would no longer constitute a "Superior Proposal" as defined in the Amended Atlas Merger Agreement.

The Chatham Merger Agreement has been unanimously approved by the RRD Board of Directors (the "Board"). Under the terms of the Chatham Merger Agreement, an affiliate of Chatham will acquire all of the RRD common stock not already owned by affiliates of Chatham for $10.85 per share in cash. The purchase price represents a premium of 4.8% over $10.35, the price per share of RRD common stock under the Amended Atlas Merger Agreement.

"This transaction, which follows a robust and thorough process, is a recognition of the enormous value created by our talented employees, whose passion and dedication to the success of RRD and our clients has enabled us to achieve this important milestone," said Dan Knotts, RRD President and Chief Executive Officer. "Under Chatham's ownership, I expect that RRD will remain an industry leading marketing and business communications company, with enhanced resources and flexibility, to effectively meet the evolving needs of our clients."

"As a longstanding, supportive investor in RRD, we are pleased to have reached this agreement with the Company. RRD possesses a strong portfolio of assets and capabilities, and we look forward to leveraging our deep understanding of its business, as well as our extensive experience in the print media and related industries, to drive long-term value for all stakeholders," said Chatham.

**Certain Terms, Approvals and Timing**
The Chatham transaction is expected to close in the first half of 2022, subject to customary closing conditions, including the approval of RRD stockholders and receipt of regulatory approvals.

The Chatham Merger Agreement contemplates that affiliates of Chatham will finance the transaction through a combination of committed equity financing provided by Chatham and certain of its affiliates and debt financing for which Jefferies Finance LLC and

Wells Fargo Capital Finance have provided commitments. The transaction is not subject to a financing condition.

RRD expects to announce a special meeting of stockholders to approve the Chatham transaction at a later date. Chatham and certain of its affiliates, which hold approximately 14.99% of the outstanding shares of RRD common stock, have entered into a voting agreement with RRD, pursuant to which they have agreed, among other things, to vote their shares of RRD common stock in favor of the transaction.

Upon completion of the Chatham transaction, RRD's shares will no longer trade on the New York Stock Exchange, and RRD will become a private company.

The foregoing description of the Chatham Merger Agreement and the transactions contemplated thereby is subject to, and is qualified in its entirety by reference to, the full terms of the Chatham Merger Agreement, which RRD will be filing with the U.S. Securities and Exchange Commission (the "SEC") on Form 8-K. References herein to terms of the Amended Atlas Merger Agreement are subject to, and are qualified by reference to, the full terms of the Amended Atlas Merger Agreement, which RRD filed with the SEC on Form 8-K on November 4, 2021 and December 10, 2021.

**Advisors**
Centerview Partners LLC is serving as financial advisor and Skadden, Arps, Slate, Meagher & Flom LLP is serving as legal advisor to RRD.

Jefferies LLC is serving as financial advisor and Olshan Frome Wolosky LLP and Lowenstein Sandler LLP are serving as legal advisors to Chatham.

\* \* \*

22.    On December 29, 2021, the Company announced that a strategic buyer ("Strategic Party") sent an unsolicited non-binding proposal to acquire the Company for $11.00 per share in cash. The Board decided that this did not constitute a "Alternative Acquisiiton Proposal."

23.    On January 20, 2022, the Company announced that the Strategic Party increased its offer price to $11.50 per share in cash (the "Updated Proposal"). However, the Strategic Buyer

withdrew the Updated Proposal on February 2, 2022 and the Company remains subject to the Merger Agreement with Chatham.

24.     The Board has unanimously approved the Proposed Transaction. It is therefore imperative that R. R. Donnelly's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.**     **The Materially Incomplete and Misleading Proxy Statement**

25.     On January 21, 2022, R. R. Donnelly filed the Proxy Statement with the SEC in connection with the Proposed Transaction.  The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction.  The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning R. R. Donnelly Financial Projections*

26.     The Proxy Statement fails to provide material information concerning financial projections by R. R. Donnelly management and relied upon by Centerview in its analysis. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and the financial advisors with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails

to provide, certain information in the projections that R. R. Donnelly management provided to the Board and the financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

27.      For the Company Projections, which includes Scenarios 1, 2, and 3, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: (i) Adjusted EBITDA, (ii) Levered FCF, (iii) Unlevered FCF, and (iv) Unlevered FCF before Pension, but fails to provide line items used to calculate these metrics and/or a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

28.      When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measures disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

29.      The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the

measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

30.    Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Proxy Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Centerview' Financial Analysis*

31.    With respect to Centerview's *Selected Public Company Analysis*, the Proxy Statement fails to disclose: (i) the metrics for the companies selected by Centerview in the analysis, including each company's enterprise value and estimated 2022 EBITDA; and (ii) the inputs and assumptions underlying the reference range of multiples selected by Centerview.

32.    With respect to Centerview's *Selected Precedent Transactions* Analysis, the Proxy Statement fails to disclose: (i) the metrics for the transactions selected by Centerview in the analysis, including each company's enterprise value and last 12-month EBITDA; and (ii) the inputs and assumptions underlying the reference range of multiples selected by Centerview.

33.    With respect to Centerview's *Discounted Cash Flow Analysis* for the Company, the Proxy Statement also fails to disclose: (i) the implied terminal value for the Company; (ii) the inputs and assumptions underlying the use of terminal multiples ranging from 4.0x to 5.0x (iii) the inputs and assumptions underlying the range of discount rates ranging from 7.5% to 9.5%; (iv) the

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

weighted average cost of capital of the Company; (v) the Company's estimated net debt, non-controlling interests and after-tax underfunded pension and other postretirement benefits as of September 30, 2021; and (vi) the number of fully diluted outstanding shares of Company common stock.

34.     With respect to Centerview's *Analyst Price Target Analysis*, the Proxy Statement fails to disclose: (i) the analysts reviewed for the analysis and (ii) the price targets observed.

35.     In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

**CLAIMS FOR RELIEF**

**<u>COUNT I</u>**

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

36.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

37.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

38.     Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction.   Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, financial analysis that were prepared by Centerview and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

39.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.   Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).   The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

40.     Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement.   The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.   Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully.   Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives and the Company's financial projections.

41.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and

omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

42.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

43.     The Individual Defendants acted as controlling persons of R. R. Donnelly within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of R. R. Donnelly, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of R. R. Donnelly, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

44.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

45.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of R. R. Donnelly, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was

reviewed by the Board prior to voting on the Proposed Transaction.  The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction.  The Individual Defendants were thus directly involved in the making of the Proxy Statement.

46.    In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.   The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

47.    By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

48.    As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

49.    Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A.    Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with,

consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B.     Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.     Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.     Granting such other and further equitable relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.


Dated: February 2, 2022                              **MELWANI & CHAN LLP**

                                    By:  /s *Gloria Kui Melwani*
                                         Gloria Kui Melwani (GM5661)
                                         1180 Avenue of Americas, 8th Fl.
                                         New York, NY 10036
                                         Telephone: (212) 382-4620
                                         Email: gloria@melwanichan.com

                                         *Attorneys for Plaintiff*